Stella Dziedzic, p. p. a.
vs.
Collins Bros. Machine Company — No. 90,913.

John Dziedzic
vs.
Collins Bros. Machine Company — No. 90,015.

John Dziedzic
vs.
Charles E. Collins, Jr. — No. 90,916.

Stella Dziedzic, p. p. a.
vs.
Charles E. Collins, Jr. — No. 90,014.

January 15, 1934.

BAKER, P. J. Heard without a jury.

This action is brought by an infant plaintiff[*] through her father as next friend to recover damages for personal injuries from the operator of an automobile. It was tried with Law Nos. 90,013, 90,015 and 90,016, which are cases brought by the plaintiff's father against the operator of the machine to recover for the expenses caused by the accident in question, and by the plaintiff and her father against the registered owner of said automobile, all said cases relating to the same accident.

The evidence presented shows without question that the plaintiff herein suffered serious injuries. She was struck by an automobile operated by the defendant at a street intersection in the city of Pawtucket and, after being struck, was thrown some considerable distance up the street. She narrowly escaped being hit by two automobiles proceeding in the opposite direction.

138

The evidence discloses that her skull was slightly fractured, that both legs were broken, and that she had to remain in the hospital some four months. She suffered considerable pain and lost approximately a year's schooling. All things considered, her recovery was good. She has, however, a permanent injury in that the left leg is about half an inch shorter than the other. She also has a slight scar in the neighborhood of her ear. Claim was made in relation to a curvature of the spine and in regard to her hearing, but the Court does not feel that these elments of damage, if they exist, were successfully established by the plaintiff as being due to the accident.

The first question to be considered is whether a fair preponderance of the evidence shows that the defendant was guilty of negligence in relation to the accident.

It appears that the plaintiff, who was nine years old at the time of the accident, was returning to her home from a theatre with a companion of approximately her own age, at about nine o'clock on the evening of July 23, 1932. They proceeded northerly along North Main Street until they came to the intersection of North Main and Exchange Streets. Their purpose was to cross Exchange Street and continue along North Main Street in a northerly direction.

The testimony discloses that it was a very stormy night, that it was raining hard, was very dark, and that the roads were somewhat slippery. At this intersection of North Main and Exchange Streets there is a traffic light and also another light of considerable brightness. The plaintiff and her companion started to cross Exchange Street. Plaintiff's companion turned back but the plaintiff continued and was struck by the car operated by the defendant when she was about two-thirds of the way across Exchange Street. The plaintiff and her companion both claim that the light was in their favor when they started to cross. The defendant, however, testifies that the light was green, indicating that it was proper for him to proceed. Unfortunately, as the night was wet and stormy, not many persons were near the intersection and it is difficult to get the testimony of disinterested witnesses.

The defendant, who was a student about 19 years of age, was driving westerly down Exchange Street from the direction of the High School and over the bridge to the intersection in question. It was his intention to cross the intersection and to proceed up Exchange Street. The defendant himself testifies that the visibility was poor and that he could only see through the portion of the windshield cleared by the wiper. He says that the window at his left was up and that it was so obscured by rain that he could not see through it. His claim is that he did not see the plaintiff at all until she ran into or was struck by the automobile. He testifies that he had just passed a car proceeding in the opposite direction and he contends that the plaintiff ran from behind this car. The evidence of the plaintiff and her companion is contradictory to this in that they say they saw no car approaching from their left.

In a report to the police, made soon after the occurrence, the defendant fixes his speed at the intersection at 25 miles per hour. At the trial he placed it at about 20 miles an hour on Exchange Street and about 15 miles at the crossing. A witness named Varone, who was on the sidewalk on Exchange Street, places the speed of the defendant's car at about 30 miles an hour. Another witness named Gumpson gives the speed of the car driven by the defendant as about 15 or 20 miles per hour approaching the intersection and

from 12 to 15 miles near the light. Another witness, named Good, says the defendant was going about 20 miles an hour.

Giving due consideration to all this testimony and keeping in mind that the defendant, shortly after the accident, himself placed his speed at 25 miles per hour, it seems to the Court reasonable to find that the defendant was operating his car as he crossed the intersection somewhere in the neighborhood of 25 miles per hour.

The plaintiff further alleges that the testimony bears out the claim that the defendant's windshield wiper was not working properly. A brother and sister of the plaintiff and a friend had a conversation with the defendant late that night after the accident, and it is claimed that the statement in question was then made. The defendant denies absolutely making any such statement and nothing appears about such a condition in the police reports, although the car was examined after the accident by a policeman. The witnesses who testified to this are interested and did not particularly impress the Court, and it does not find that this claim of the plaintiff is substantiated.

The testimony as to the color of the traffic lights at the time of the accident is absolutely conflicting. After giving the evidence relating to the manner in which the defendant operated the automobile, however, careful consideration, and assuming that the light was of such a color as to permit the defendant to proceed, the Court, nevertheless, has come to the conclusion that the plaintiff has shown by a fair preponderance of the evidence that the defendant was operating his car in a manner which was negligent and which contributed to the accident. In the first place, it is clear that the road was somewhat slippery and that, owing to the darkness and the heavy rain, visibility was not very good. It seems

to the Court that a person operating a machine under these circumstances at a speed of 25 miles an hour, or thereabouts, across a city intersection, is operating in a negligent manner considering the conditions prevailing that evening. The facts following immediately after the accident would tend to show that probably the estimate of 25 miles an hour was conservative. The westerly side of Exchange Street across the intersection is somewhat upgrade. Nevertheless, the defendant's car proceeded some considerable distance after the impact and finally stopped some 100 feet or more from the corner. It is clear that the brakes of the car were in good condition and were applied immediately. Either the defendant's automobile was going very fast or the defendant permitted his car to proceed some little distance up Exchange Street in order to find a place in which to park, it appearing from the evidence that two or three cars were parked on the northerly side of Exchange Street at that point. Further, the plaintiff after she was struck was thrown perhaps some eighty feet or more up Exchange Street, which to the Court would indicate that the car was proceeding at some considerable speed. Further, the left headlight of the car was broken and the number plate was bent inward.

In the judgment of the Court all these circumstances tend to corroborate the plaintiff's contention that the automobile driven by the defendant was proceeding across the intersection at a considerable speed, and that under the conditions then existing, the defendant was not in the exercise of due care.

The next and most difficult question in the case relates to the matter of contributory negligence on the part of the plaintiff. At the time of the accident she was nine years old and undoubtedly cannot be held to the degree of care of an adult. At the same

time, she is obliged to use the care which the ordinarily prudent child of her age and intelligence would use under the circumstances existing at the time of the accident. Both the plaintiff and her companion impressed the Court favorably. They seemed to be unusually bright, observant and intelligent children. It cannot well be disputed that the defendant's car struck the plaintiff because of the condition of the headlight and number plate. The defendant's claim that the child ran into his mudgard does not appear to be substantiated by the evidence. No injury was disclosed to the mudguard and the child instead of falling to one side was thrown up the street.

The evidence in the case as a whole, however, is in considerable confusion as to whether or not the plaintiff was running at the time of the accident. Under ordinary conditions, it seems reasonably well settled that if a child of the age and intelligence of this plaintiff ran or darted in front of an automobile and was struck, then she would be guilty of such contributory negligence as would bar recovery. There have been several cases of this general type in this State.

See *Willett* vs. *Slocum*, 47 R. I. 136.

The plaintiff and her companion claimed they were walking. The plaintiff's companion went only a short distance across the street and then returned to the sidewalk. It is possible, of course, that the plaintiff began to run after her companion's back was turned and while she was returning to the sidewalk. The witness Varone, who was some little distance up the sidewalk on Exchange Street, and whose view was possibly somewhat obstructed by parked cars, testified that he saw only the plaintiff and did not see her companion at all, and that the plaintiff was walking and was not running, although at one time he made

the statement that he was not entirely sure as to this. He did not see the accident itself.

The witness Gumpson, who was also placed on the stand by the plaintiff, testified that one child ran and the other did not, and that one child ran in front of the automobile, although he did not see the automobile strike her. Neither of these witnesses noticed the condition of the traffic light at the time.

The witness Good, who was in an automobile and who was placed on the stand by the defendant, gave evidence that no child crossed in front of his machine and that he saw no little girl at all.

The plaintiff and her companion say that when they came to the intersection, they looked both to the right and to the left; that they saw no car approaching from the left but that the car driven by the defendant was a considerable distance up Exchange Street in the neighborhood of the High School. The evidence shows that this would place the car driven by the defendant at some 360 feet or so from the corner. Exchange Street at the point where the plaintiff was crossing was 38 feet between curbs and from the curbing to the point where the plaintiff was struck was about 22 feet. There is some evidence that when the plaintiff was in the middle of the street, the automobile driven by the defendant was just coming off the Exchange Street bridge and that the plaintiff did not thereafter look again.

A consideration of this evidence would seem to show either that the defendant's car was proceeding at a very high rate of speed or that the plaintiff and her companion were in error as to the distance of the car up Exchange Street. On the whole the latter seems to the Court the more reasonable conclusion. The Court is of the opinion that the car was somewhat nearer the intersection than the plain-

tiff and her companion claim. It is difficult at night, and particularly on a stormy and dark night, to estimate the distance away of an approaching car with its headlights lit.

The condition of the traffic light and the circumstances under which the plaintiff and her companion started to cross the road seem to the Court two of the more important considerations to be determined in passing upon the question of contributory negligence on the part of the plaintiff. The evidence in relation to the condition of the traffic light is very conflicting and very unsatisfactory. The defendant has argued that possibly the girls gave a hasty look at the light and noticed the green portion of the light, indicating that traffic could proceed up and down Exchange Street, and mistook it for a signal that they could proceed with safety. Of course, if the light was favorable to the plaintiff when she started but changed while she was part way across, this would not give the defendant the right to proceed heedlessly over the intersection. This holding is sustained by the general weight of authority, and see also the provisions of the Pawtucket traffic ordinance (Plaintiff's Exhibit 10).

The defendant placed on the stand a witness named Good, who testified that he was in an automobile proceeding in an easterly direction on Exchange Street and that he passed the defendant's car just before he himself had passed under the traffic light, and that right after the machines passed, he heard the noise of the accident and that he drove his machine across the intersection and parked it a little distance up Exchange Street. He also testifies that at this time the light was green so that cars could pass up and down Exchange Street. This witness is apparently disinterested, having no connection with any of the parties, and appeared to the Court to be a man of responsibility. There is also some rather indefinite evidence that other cars passed through the intersection at about this time, and it does appear as though two other machines came down Exchange Street, going easterly, and almost struck the plaintiff as she was lying on the ground after she had been hit by the car driven by the defendant. The difficulty about the evidence · of the witness Good is that it would tend to appear that he places the point of the accident at a little distance up Exchange Street in a westerly direction. However, bearing in mind the difficulty of fixing exact locations and distances, particularly on such a night as the witness describes, it does not seem to the Court that this is sufficiently serious to throw doubt on his testimony. There is no question but that he was there as his name appears in one of the police reports.

Taking all the evidence relating to the condition of the traffic light into consideration, the Court has come to the conclusion that the defendant's contention that the light was green in his favor at or about the time he crossed through the intersection is sustained by a fair preponderance of the evidence. The Court places considerable weight on the testimony of the witness Good.

In connection with the conduct of the plaintiff at the time she started to cross the street, no satisfactory explanation was ever offered by her as to why her companion turned back to the sidewalk. The girls were of approximately the same age and intelligence and would be held to the same general degree of care. The plaintiff's companion testifies that after she had gone a few steps across the street, possibly a quarter of the way over, she turned back. When she was pressed for an answer as to why she had done this, she could give no reason. She said that she did not know

why but that something made her turn back. It seems to the Court to be a reasonably obvious deduction that what made the plaintiff's companion turn back was the approach of the car driven by the defendant. This situation, in the mind of the Court, raises a very serious doubt as to whether the plaintiff in crossing the intersection that night was herself in the exercise of due care.

After giving this question serious thought, the Court is of the opinion that the weight of the evidence shows that the plaintiff herself was guilty of negligence which contributed to the accident. Her manner of crossing the street, her companion's conduct and the fact that the car driven by the witness Good passed through the intersection at about the same time that the defendant's car did, together with the other facts and circumstances surrounding the accident, tend to bring the Court to this conclusion. For this reason there is a decision for the defendant in each of the above cases.

For plaintiff: Michael Pedro.

For defendant: Messrs. Quinn, Kernan & Quinn.

